# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

NET MANAGEMENT SERVICES, a
Nevis limited liability company,

      Plaintiff,

vs.

PERFECT 10, INC., a California
corporation, and DOES 1-10, inclusive,

      Defendants.

CASE NO.: 02 60585 CIV
DIMITROULEAS



NIGHT BOX
FILED

CLERK, U.S. DIST. CT.

## PLAINTIFF NET MANAGEMENT SERVICES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PERFECT 10'S MOTION TO DISMISS, TRANSFER OR STAY

LAW OFFICES
BECKER & POLIAKOFF, P.A. • 3111 STIRLING ROAD • FT. LAUDERDALE, FLORIDA 33312
TELEPHONE (954) 987-7550



## <u>TABLE OF CONTENTS</u>

**Page(s)**

<u>INTRODUCTION AND SUMMARY OF ARGUMENT</u> ................................................. 1

<u>STATEMENT OF FACTS</u> ........................................................................................ 2

<u>ARGUMENT</u> ........................................................................................................ 7

I.  THE SOUTHERN DISTRICT OF FLORIDA IS THE MOST CONVENIENT
    VENUE FOR LITIGATION OF THE ISSUES BETWEEN THE PARTIES .............. 7

    A. <u>The Convenience of the Parties Favor Litigation in Florida.</u> ............................. 9

    B. <u>The Alleged Events Took Place in Florida.</u> ..................................................... 10

    C. <u>The Physical Evidence is in Florida.</u> ............................................................... 11

    D. <u>This Court has Greater Familiarity with the Applicable State Law, Which is
    Florida Law</u> ................................................................................................. 11

    E. <u>This District is Less Congested than the Central District of California</u> ........... 14

    F. <u>The Interests of Justice Weigh in Favor of Litigation of the Parties'
    Disputes in this District, Where the First Action Between Them was Filed</u> .... 14

II. STAY OF THIS ACTION IS NOT WARRANTED .................................................. 19

<u>CONCLUSION</u> ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abbott Labortories, Inc. v. Mead Johnson & Co.,*
  1998 U.S. Dist. LEXIS 12317 (S.D. Ohio April 21, 1998).....................................15

*AbovePeer, Inc. v. Recording Industry Assoc. of America,*
  166 F.Supp. 2d 655 (N.D. N.Y. 2001) ...................................................15

*Allstate Insur. Co. v. Clohessy,*
  9 F. Supp. 2d 1314 (M.D. Fla. 1998) ....................................................16

*Alltrade, Inc. v. Uniweld Products, Inc.,*
  946 F. 2nd 622 (9th Cir. 1991) ..............................................................15

*Ann-Margret v. High Society Magazine, Inc.,*
  498 F. Supp. 401 (S.D.N.Y. 1980) .......................................................11

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,*
  805 F. 2nd 663 (7th Cir. 1986) .............................................................12

*Bates v. Cook, Inc.,*
  615 F. Supp. 662 (M.D. Fla. 1984) ......................................................14

*Bishop v. Florida Specialty Paint Co.,*
  389 So. 2nd 999 (Fla. 1980) ................................................................12

*Brewer v. Hustler Magazine,*
  749 F. 2nd 527 (9th Cir. 1984) .............................................................11

*Brown v. Connecticut General Life Ins. Co.,*
  934 F. 2nd 1193 (11th Cir. 1991) ...........................................................9

*Continental Grain Co. v. Barge FBL-585,*
  364 U.S. 19, 80 S. Ct. 1470 (1960) .........................................................9

*Decker Coal Co. v. Commonwealth Edison Co.,*
  805 F. 2nd 834 (9th Cir. 1986) ..........................................................9, 15

## TABLE OF AUTHORITIES

**Page(s)**

*Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.,*
753 F. Supp. 1566 (S.D. Fla. 1990) ........................................................................ 13

*Desantis v. Hafner Creations, Inc.,*
949 F. Supp. 419 (E.D. Va. 1996) ............................................................................ 8

*Employers Ins. Of Wausau v. Prudential Ins. Co.,*
763 F. Supp. 46 (S.D. N.Y. 1991) .......................................................................... 16

*Everest Capital Ltd. v. Everest Funds Management, L.L.C.,*
178 F. Supp. 2d 459 (S.D.N.Y. 2002) ...................................................................... 8

*Ferens et ux. v. John Deere Co.,*
494 U.S. 516, 110 S. Ct. 1274 (1990). ................................................................... 14

*Genentech, Inc. v. Eli Lilly and Co.,*
998 F.2d 931 (Fed. Cir. 1993). ............................................................................... 16

*Genentech, Inc. v. Regents of the Univ. of Cal.,*
143 F.3d 1446 (Fed. Cir. 1998) ). .......................................................................... 16

*Glennon v. Dean Witter Reynolds,*
83 F. 3rd 132 (6th Cir. 1996) ................................................................................. 12

*H.H. Robertson Co. v. Lumbermen's Mutual Casualty Co.,*
94 F.R.D. 578 (W.D. Penn. 1982) ......................................................................... 19

*Kearns v. Wood Motors, Inc.,*
1978 U.S. Dist. LEXIS 14542 (E.D. Mich. Nov. 5, 1978) ...................................... 8

*Leidholdt v. L.F.P., Inc.,*
860 F. 2nd 890 (2nd Cir. 1988) ............................................................................... 11

*Meeropol v. Nizer,*
505 F.2d 232 (2nd Cir. 1974) ................................................................................. 18

*Moore Corp. Ltd. v. Wallace Computer Services, Inc.,*
898 F. Supp. 1089 (D. Del. 1995) ............................................................................ 8

*Northwest Airlines, Inc. v. American Airlines, Inc.,*
989 F.2d 1002 (8th Cir. 1993) ............................................................................... 15

## TABLE OF AUTHORITIES
Page(s)

*Petrik v. Public Service Mutual Ins. Co.,*
  879 F.2nd 682 (9th Cir. 1989) ................................................................. 11

*Paracor Fin., Inc. v. General Elec. Capital Corp.,*
  96 F. 3rd 1151(9th Cir. 1996) ................................................................. 12

*Save Power Ltd. v. Syntek Finance Corp.,*
  121 F.3d 947 (5th Cir. 1997) ................................................................. 19

*Shell v. Shell Oil Co.,*
  165 F. Supp.2nd 1096 (C.D. Cal. 2001) ................................................... 11

*St. Helena Wine Co., Inc. v. Allied Management, Inc.,*
  1998 U.S. Dist. LEXIS 12558 (N.D. Cal. Aug. 10, 1998) ...................... 18

*Stomp, Inc. v. Neato, LLC,*
  61 F. Supp. 2d 1074 (C.D. Cal. 1999).......................................................8

*Supreme International Corp. v. Anheuser-Busch, Inc.,*
  972 F. Supp. 604 (S.D. Fla. 1997) ...................................................... 15, 16

*Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.,*
  92 F. 3rd 1110 (11th Cir. 1996) ............................................................. 12

*Ward v. Follett Corp.,*
  158 F.R.D. 645 (N.D. Cal. 1994) ........................................................ 15

*Wenz v. Memery Crystal, et al.,*
  55 F.3rd 1503 (10th Cir. 1995)................................................................ 11

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1404(a) ...................................................................................... 9

## FLORIDA STATE STATUTES

*Fla. Stat. 501.201 et seq.* ............................................................................ 14

*Fla. Stat. 540.08* ......................................................................................... 14

<u>**TREATISES & SECONDARY SOURCES**</u>    **Page(s)**

17 Moore's Federal Practice (Matthew Bender 3d ed.) ...................................................... 9

Restatement (Second) Conflict of Laws §145 ................................................................. 12

Restatement (Second) Conflict of Laws §6 ................................................................... 12

## INTRODUCTION AND SUMMARY OF ARGUMENT

This is a case involving the false claims of Perfect 10, Inc. ("Perfect 10") -- abjectly lacking in evidentiary support -- that Net Management Services, LLC ("NMS") is supposedly at the hub of a ring that commits acts of copyright and trademark infringement, and unfair trade practices in connection with supposed exploitation of images of "celebrities."

Perfect 10 has asked that this Court dismiss, transfer or stay this action, filed on April 25, 2002 and served on May 1, 2002, in favor of an action Perfect 10 filed in California on May 7, 2002. Perfect 10 seeks to confuse the issues before the Court by starting its argument with a narrow focus on an *exception* to the "first-to-file" rule. Pursuant to the rule, deference should be accorded to NMS' decision to file in this District weeks prior to Perfect 10's decision to sue NMS in California. Not only does the first-to-file rule militate in favor of denying Perfect 10's motion unless and until Perfect 10 proves the rule should not be applied, but when the issue Perfect 10 has raised is placed in the proper focus -- whether dismissal, transfer or stay is in the interests of justice -- the relative timing of the two actions is but one of a number of relevant factors, all of which weigh heavily in favor of litigating the parties' disputes in Florida.

Perfect 10 accuses NMS of improper "forum shopping." NMS urges that the shoe is on the other foot. NMS' offices, personnel and files are in Florida, as well as its primary legal and accounting representatives. NMS is registered with the Florida Secretary of State as a foreign corporation conducting business in Florida. While NMS denies Perfect 10's claims that NMS is at the hub of an infringement ring, NMS' actions are centered in Florida. Perfect 10's state law claims should be decided under Florida law. NMS' decision to seek a declaration of its rights in Florida was therefore motivated by a desire to seek justice, not avoid it.

It is Perfect 10 that seeks to impose an injustice by forcing NMS to defend itself in a distant forum with which NMS has little connection. Perfect 10 has previously filed suit in the Central District of California against two other adult entertainment companies, Cybernet

Ventures and Tri-Tech Internet, both California corporations with offices in Los Angeles. Perfect 10 has demonstrated no legal relation between these three cases. Perfect 10's decision to bring suit in California against NMS, and other parties based in Florida and more distant jurisdictions, was motivated by Perfect 10's irrelevant preference to line up all of its litigation opponents in one courthouse that is a convenient drive from its offices.

Justice would be best served if the actions of Florida parties, to be attested to by Florida witnesses with resort to Florida documents, and to be adjudicated in part under Florida law, were decided in Florida. Perfect 10's motion should therefore be denied.

## STATEMENT OF FACTS

Perfect 10's Memorandum contains a number of sweeping assertions of supposed "fact," to the effect that NMS is allegedly at the hub of an infringement ring that has a significant California impact. These claims are ostensibly made for the purpose of attempting to persuade the Court that California is a superior forum for the disputes between the parties. In actuality, these statements are also the first salvo in Perfect 10's attempt to gain unfair advantage by confusing the Court regarding NMS and the nature of its business. Perfect 10's representations of "fact" consist at best of inaccuracies and, at worst, bold and inflammatory representations for which Perfect 10 has absolutely no supporting evidence. The record requires correction.

### The True Nature of NMS and the Properties it Manages

Contrary to Perfect 10's sharply worded charges, NMS is a reputable business that is known for its respect for the intellectual property rights of content providers. Substantial sums are expended acquiring licenses to the content displayed on NMS' clients' web sites. (Bennett Decl. ¶ 3.) NMS works closely with the "Association for the Protection of Internet Copyright" ("APIC"), an organization that seeks to protect the rights of artists and content providers. The head of APIC, Steve Easton, who works with Perfect 10 on the *Perfect 10 v. Cybernet Ventures case*, has seconded NMS' assurance that NMS is a reputable business that does not, as Perfect 10

claims, steal content.  (Bennett Decl. ¶ 4; see generally Steve Easton Declaration.)

Representatives of NMS have, prior to Perfect 10's Motion, provided to Perfect 10 detailed disclosures regarding NMS and its relationships, or lack thereof, with regard to the issues raised by Perfect 10 in its correspondence with NMS.  NMS expressed its concern that Perfect 10 was leveling accusations without the minimal factual investigation required by Rule 11 of the Federal Rules of Civil Procedure.  NMS requested that Perfect 10 disclose whatever evidence it may have, if any, supporting its claims, but Perfect 10 has not done so.  (Bennett Decl. ¶ 7, Exhs. A, B.)  Perfect 10 has improperly ignored the information provided by NMS, and continues to assert its claims without supporting evidence.

The true facts are that, for purposes of the issues in this case, the web sites and programs that NMS manages -- and the connection, or lack thereof, between NMS and the content associated with those programs -- can be divided into three categories: (a) membership web sites managed by NMS, some sixty in number; (b) an "Adult Verification Service" ("AVS") style site, known as "Sex Check;" and (c) an advertising program, known as "Traffic Cash Gold."  Perfect 10's Motion offers no evidence of infringing conduct in any of these three areas.

Membership Sites:  The membership web sites managed by NMS are owned and published by clients of NMS.  The content displayed on the sites owned and published by these clients was acquired, at substantial expense, at first by NMS' clients and currently by NMS, through lawful license arrangements.  (Bennett Decl. ¶ 11.)

The Zadeh Declaration contains *no evidence* of any unlawful use on any NMS managed membership site.  (Bennett Decl. ¶ 13.)

Sexcheck.com:  Sexcheck.com, owned by I-Verification Systems AVV, is the one membership site managed by NMS that is an "Adult Verification System" or "AVS" style site.  The content model is different with this site.  By purchasing a single "Sex Check" pass, the consumer gains access to the content maintained on a number of participating Sex Check sites.

NMS acquires some content for those sites, and the rest of the content is obtained by third party web masters, about fifty in number, that participate in Sex Check. Each of these participating web masters represents to NMS that they have the rights to display all of the content on their sites. (Bennett Decl. ¶ 14.)

Perfect 10's opposition has *no evidence* of any violation of its rights on Sex Check. Its sole exhibit regarding Sex Check is a screen capture of an outdated web page making reference to Britney Spears on a web site that has not participated in Sex Check since February 2002. (Bennett Decl. ¶ 17.)

Traffic Cash Gold: Traffic Cash Gold is the name of an NMS-managed advertising program, sometimes referred to in the Internet business generally as an "affiliate" program, through which independent third parties receive compensation for sending Internet traffic to the sites of NMS' clients. "Traffic Cash Gold" is simply a trade name used to describe an advertising program, not, as Perfect 10 says, a company or a network of web sites. The Agreement by which third parties participate in Traffic Cash Gold is between those third parties and an NMS client, not NMS. It is not true, as Perfect 10 says, that NMS makes payments to affiliates under the Traffic Cash Gold program; those payments are made by NMS' client. There is no truth to any of the statements in Perfect 10's papers to the effect that NMS acquires, manages, controls, has knowledge of or has anything to do with content maintained by the third parties who elect to participate in the Traffic Cash Gold program. (Bennett Decl. ¶ 18.)

Perfect 10's single example of a supposed infringement maintained by a third party advertising through the Traffic Cash Gold program is another badly outdated page formerly published by a third party that is not currently advertising any NMS managed sites. (Bennett Decl. ¶ 27.)

### Perfect 10's Baseless Claim that NMS Traffics in "Stolen" Content

The sharpest juxtaposition between Perfect 10's representations to the Court and the

evidence is reflected in Perfect 10's various assertions that NMS traffics in "stolen" content. (*See* Perfect 10 Memo. pp. 3, 4, 13.)  The evidence Perfect 10 cites for these assertions is ¶¶ 15-20 and 24 of the Zadeh Declaration.  Those paragraphs contain no evidence at all regarding any content "stolen" by NMS.  Indeed, one of the cited paragraphs of the Zadeh Declaration, ¶ 24, refers to content that was "licensed."

### NMS is not Present in California

NMS is a Nevis limited liability company.  NMS has registered with the Florida Secretary of State as a foreign limited liability company doing business in Florida.  NMS conducts business through its offices in Fort Lauderdale, Florida, and through the offices of its corporate manager in Nevis. (Bennett Decl. ¶ 8.)

NMS is a company that manages Internet properties for its clients.  NMS does not itself own any web sites.  NMS manages Internet properties under contracts with third party companies that own and publish such properties. (Bennett Decl. ¶ 9.)

NMS has no facilities or personnel in California, or for that matter west of Fort Lauderdale.  NMS has no accounts or personal or real property in California.  NMS has no clients in California.  The vast majority of NMS' clients are foreign entities located east of the United States.  NMS has earned no revenues relating to business transacted in California.  NMS has no need to, and therefore has not, interacted with any agency in California.  NMS has not sued, nor, until now, been sued, in California. (Bennett Decl. ¶ 28.)[1]

Perfect 10 claims that "NMS does business throughout the world over the Internet, including in California." (Perfect 10 Memo. p. 4.)  This is not true.  NMS manages web sites, but NMS owns no web sites.  The web sites are owned and published by NMS' clients. (Bennett

---

[1] Perfect 10 claims that "NMS" has previously filed suit in California.  As can plainly be seen in the Complaint submitted by Perfect 10 in support of this point, I-Verification, not NMS, was the party to that case.

Decl. ¶¶ 9, 28.)

Perfect 10 says, falsely, that cybersexnetwork.com and celebrityhot.com are web sites "controlled" by NMS. Those web sites have nothing to do with NMS. The only connection between NMS and the companies that own those web sites is that the latter may have made a choice to participate in the Traffic Cash Gold program by advertising an NMS-managed site. NMS does not "control" the operations of those third parties. (Bennett Decl. ¶ 31.)

NMS has no agreements with Paycom, a processing company that Perfect 10 says has offices in California. Paycom's relationship is with NMS' clients, the owners and publishers of the sites NMS manages. (Bennett Decl. ¶ 32.)

### Florida is a More Convenient Forum to Litigate this Case

NMS maintains business offices and files in Fort Lauderdale, Florida. NMS' witnesses and its primary legal and accounting representatives are in the South Florida area. (Bennett Decl. ¶ 35.)

This Court is convenient to NMS and its witnesses. By contrast, trial of this action in California would cause an extreme hardship on NMS' ability to conduct business during the trial. (Bennett Decl. ¶ 37.)

Most of the other parties to Perfect 10's California action have even less to do with California than NMS. Those parties are either in Ft. Lauderdale or in foreign jurisdictions east of Florida. (Bennett Decl. ¶¶ 38-43.)

In contrast to the relationship between NMS and the California forum, Perfect 10 conducts substantial business operations in Florida. (See Request for Judicial Notice, Declaration of Robert Devin.)

### The First-to-File Rule Should be Followed

This action was filed on April 25, 2002. Perfect 10's California action was not filed until May 7, 2002. Perfect 10's loud claims of "fraud" and "lies" in connection with the timing of the

filing of this action and the California action are without basis.  Perfect 10's April 9, 2002 communication (Zadeh Decl. Exh. 2) stated that it would wait until April 29, 2002 for contact by NMS before taking unspecified "steps."  NMS therefore did not need to dupe Perfect 10 into sitting on its rights in order to file suit before April 29.

Perfect 10 has made other threats, including to clients of NMS, which have not resulted in litigation being filed.  (Bennett Decl. ¶ 44.)  Nothing in Perfect 10's April 9, 2002 letter led NMS to conclude for a certainty that Perfect 10 was in fact going to file suit in California after April 29, 2002.  One of the possibilities was that the April 9 letter represented another effort by Perfect 10 to make threats that would not be followed up in court.  NMS wanted to have a court ruling on the legality of the conduct challenged by Perfect 10, so that Perfect 10 could not hold vague threats over the heads of NMS and its clients indefinitely.  (Bennett Decl. ¶ 45.)

Contrary to Perfect 10's current assertion that suit was "imminently" being filed against NMS in California, Dr. Zadeh, Perfect 10's principal, has admitted that Perfect 10 had not made a concrete decision to sue NMS in California.  Zadeh stated to Steve Easton, who is working with Perfect 10 on the *Cybernet Ventures* litigation, that "Perfect 10 had not intended to sue NMS or Bennett, and . . . Perfect 10 filed suit in California only defensively and in reaction to learning that NMS had sued Perfect 10 in Florida."  (See Easton Declaration.)

**Procedural Status of the California Action**

NMS and Bennett have filed motions to dismiss, transfer or stay Perfect 10's California action.  (See NMS' Request for Judicial Notice.)  Hearing on that motion is currently set, pursuant to stipulations extending time, for July 8, 2002.

## ARGUMENT

**I.   THE SOUTHERN DISTRICT OF FLORIDA IS THE MOST CONVENIENT VENUE FOR LITIGATION OF THE ISSUES BETWEEN THE PARTIES.**

Perfect 10 seeks to confuse the issues before the Court by starting its argument with a narrow focus on an *exception* to the so-called first-to-file rule, pursuant to which deference should be accorded to NMS' decision to file in this District weeks prior to Perfect 10's decision to sue NMS in California. Perfect 10 misstates the law by urging that the interests of justice turn mechanically on the answer to a single question, whether this action, a first-filed declaratory relief action, can be said to have "anticipated" Perfect 10's subsequent lawsuit in California. To the contrary, the proper focus for the issue raised by Perfect 10 is whether, taking all relevant factors into account, the interests of justice would be served by dismissal, transfer or stay of this action. NMS urges that the answer to that question is "no."

NMS' decision to file in Florida was an act calculated to seek justice, not avoid it, and Perfect 10 is entitled to no remedy arising from NMS' well-grounded choice of forum. Rather, it is Perfect 10 that has engaged in "forum shopping" in the true sense of that phrase, manipulating events to steer litigation to a forum that lacks the most superior connection with the case.[2]

---

[2]   Just as Perfect 10 uses the word "anticipatory" so broadly that it loses meaning, Perfect 10 also uses the term "forum shopping" indiscriminately without analyzing whether the policy against impermissible forum shopping applies to NMS' decision to file in Florida. It does not. "The term 'forum shopping,' often used indiscriminately, has a pejorative connotation. Yet, strictly speaking, venue and long-arm statutes authorize some degree of legitimate forum shopping." *Desantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 424, n. 14 (E.D. Va. 1996) (finding improper forum shopping where personal jurisdiction "manufactured by plaintiff solely for the purpose of providing plaintiff with a preferred forum for litigation.") There is nothing improper about a plaintiff bringing an action in its own district. *See Stomp, Inc. v. Neato, LLC*, 61 F. Supp. 2d 1074, 1082 (C.D. Cal. 1999) (Plaintiff's decision to bring declaratory judgment action "in its home forum of California does not amount to impermissible forum shopping.") The test for improper forum shopping is whether the party has selected "'a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice.'" *Everest Capital Ltd. v. Everest Funds Management, L.L.C.*, 178 F. Supp. 2d 459, 470 (S.D.N.Y. 2002) (no forum shopping where one of the parties, anticipated witnesses and relevant documents present in Nebraska). Where legitimate reasons exist for selecting the forum, forum shopping cannot be the sole reason for bringing suit in the district and, therefore, no impermissible forum shopping took place. *See Kearns v. Wood Motors, Inc.*, 1978 U.S. Dist. LEXIS 14542, at *21-22 (E.D. Mich. Nov. 5, 1978) (forum shopping not sole motivation in light of plaintiff's long-standing residence in district, industry concentration and availability of witnesses); *Moore Corp. Ltd. v. Wallace Computer Services, Inc.*, 898 F. Supp. 1089, 1100 (D. Del. 1995) ("forum shopping

The question of the relative priority of two pending actions is properly analyzed as but one of a number of factors that the courts should consider in weighing a request for a transfer for convenience under 28 U.S.C. § 1404(a).  *See* 17 Moore's Federal Practice § 111.13[1][o] (Matthew Bender 3d ed.) (priority of actions and first-to-file rule analyzed as thirteenth factor in convenience analysis); *Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26, 80 S. Ct. 1470, 1475 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that Section 1404(a) was designed to prevent.") *See Brown v. Connecticut General Life Ins. Co.,* 934 F. 2nd 1193, 1996-97 (11th Cir. 1991) [transfer to bring two cases within same district ordered under Section 1404(a)].

28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The factors to consider on a motion to transfer under Section 1404(a) include, among others: (1) the convenience of the parties and the witnesses; (2) where the events at issue in the lawsuit took place; (3) the location of the physical evidence; (4) the relative familiarity of the courts with the applicable law and the local interest in the matter; (5) relative congestion of the courts; and (6) the interests of justice relative to the pendency of two similar actions in different Districts. *See* 17 Moore's Federal Practice, *supra,* at § 111.13[1][b]; *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F. 2nd 834, 843 (9th Cir. 1986).  Each of these factors militates in favor of litigation of the parties' disputes in Florida.

A. The Convenience of the Parties Favor Litigation in Florida.

Most, if not all, of the witnesses to the conduct of NMS are located in the Southern

cannot be the sole reason for the choice of Pennsylvania as the situs for the litigation because it is the logical and proper place for it to go forward.")

District of Florida.  NMS maintains offices and files in Florida or Nevis.  Litigation of this case in California would impose a substantial hardship on NMS and its witnesses, essentially requiring NMS to shut down its Florida operations while its witnesses travel to California to prepare and wait to give testimony.  The same burdens would not be present if NMS litigated its rights as against Perfect 10 in this District.

Litigation in California is not a superior alternative.  The contacts between NMS and Bennett on the one hand and California on the other are so thin, that the motion to dismiss or transfer pending in the California action is likely to be granted.  With respect to the other defendants in the California action, six -- Netvision, I-Verification, Virtual, Bennett, Elkind, Kusnick, and 123 -- are persons or entities either in Florida or outside of the United States and east of Florida.  Perfect 10's attempt to bring those parties before the California court is not likely to succeed.  To the extent that Perfect 10 attempts to tie NMS to the conduct of those other parties, which are even more far flung from California than NMS – and Perfect 10 has accused NMS of being the hub of the non-existent scheme described in its papers -- such an attempt would make California an even less convenient venue for litigation of this action.

B.  The Alleged Events Took Place in Florida.

While NMS denies that any of the events alleged in this case actually occurred, Perfect 10 does not dispute that any conduct of NMS was undertaken in Florida.

Perfect 10 attempts to blunt the impact of this factor by claiming that an important "event" in this case is the "injury" supposedly suffered by Perfect 10, and perhaps by non-party "celebrities" that Perfect 10 does not represent, in California.  Perfect 10's argument is entitled to little weight for two reasons.  First, Perfect 10 has failed to carry its burden of producing evidence that NMS has infringed upon the rights of any party.  The party seeking to rely upon the supposed effects felt in a forum bears the burden of demonstrating, through admissible

evidence, that the alleged conduct, and the claimed "effects," actually occurred. *See Petrik v. Public Service Mutual Ins. Co.*, 879 F.2d 682, 684 (9th Cir. 1989) (Plaintiff presented no evidence of action by which defendant purposefully availed itself of forum law or purposefully directed its commercial activity toward forum state); *Shell v. Shell Oil Co.*, 165 F. Supp.2d 1096, 1109 (C.D. Cal. 2001) ["no competent evidence that Defendant [ ] 'resides' (i.e., is subject to personal jurisdiction) in this district or in this state. It is Plaintiffs' burden to establish these jurisdictional facts as to each Defendant"]; *Wenz v. Memory Crystal*, 55 F.3d 1503, 1508 (10th Cir. 1995) ("'The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading.") Here, Perfect 10's claims lack any evidentiary support. Second, even aside from the lack of evidence supporting its claims, Perfect 10 has cited no authority that any "effect" supposedly felt by a "celebrity" not a party to the case, not represented by Perfect 10, and not proven to reside in California, is properly considered by the Court in a Section 1404(a) motion by Perfect 10.[3]

    C.   The Physical Evidence is in Florida.

NMS maintains offices and files in Florida, not California. Moreover, to the extent testimony or documentation is required from NMS' accountants or attorneys, those parties and files are in the Southern District of Florida.

    D.   This Court has Greater Familiarity with the Applicable State Law, Which is Florida Law.

---

[3] In any event, Perfect 10's belief that NMS is violating the rights of celebrities when its clients refer to actresses in connection with movie reviews is wrong. A print version of this very format was upheld under the First Amendment in *Ann-Margret v. High Society Magazine, Inc.,* 498 F. Supp. 401 (S.D.N.Y. 1980). "Celebrities" do not have the capacity to censor commentary that involves them under the guise of "rights of publicity." *See Leidholdt v. L.F.P., Inc.,* 860 F. 2nd 890 (2nd Cir. 1988), cert. denied, 489 U.S. 1080, 109 S.Ct. 1532; *Brewer v. Hustler Magazine,* 749 F. 2nd 527 (9th Cir. 1984).

Perfect 10's forum shopping intentions are underscored by its desire to apply a foreign state law, with no substantial relation to NMS, in the California forum that Perfect 10 has improperly selected. While Perfect 10 threatened NMS with federal claims for copyright and trademark infringement, Perfect 10 has also raised significant state law question arising under the laws of unfair competition and rights of publicity, questions on which NMS seeks a declaration from this Court. (See Perfect 10's Complaint in the California action.) NMS respectfully urges that, as a company with Florida offices that is registered to conduct business in Florida, the question of whether it may be liable to Perfect 10 under state laws of unfair competition is most properly adjudicated under Florida law, and by this Court.

While the Court would look to federal law to determine the rights of the parties under the copyright and trademark laws, the Court would look to Florida choice of law principles to determine which state law would govern NMS's request for a declaration that it has not competed unfairly with Perfect 10. *See Paracor Fin., Inc. v. General Elec. Capital Corp.,* 96 F. 3rd 1151, 1164 (9th Cir. 1996) ("In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state"); *Glennon v. Dean Witter Reynolds,* 83 F. 3rd 132, 136 (6th Cir. 1996) ("In federal question cases, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state"); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F. 2nd 663, 681 (7th Cir. 1986), *cert. denied,* 480 U.S. 941, 107 S. Ct. 1593 (1987) (same).

With respect to tort claims, Florida courts follow the "most significant relationship" test set forth in the Restatement (Second) Conflict of Laws (the "Restatement") § 145. *Bishop v. Florida Specialty Paint Co.,* 389 So. 2nd 999, 1001 (Fla. 1980); *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.,* 92 F. 3rd 1110, 1115-16 (11th Cir. 1996). Section 145(1) of the Restatement provides: "(1) The rights and liabilities of the parties with respect to an issue in tort

are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Section 6 of the Restatement provides:

> "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied."

Section 145(2) of the Restatement provides:

> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered."

In unfair competition cases, the "place of injury" factor receives little weight for purposes of the Section 145 "most significant relationship" test. Rather, *the location of the party allegedly committing unfair competition is the most important factor. See Trumpet Vine Investments, supra,* 92 F. 3rd at 1116-18; *Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.,* 753 F. Supp. 1566, 1570-71 (S.D. Fla. 1990) ("the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and misappropriation of trade values as in other kinds of torts. Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and

the misappropriation of trade values"); *Bates v. Cook, Inc.,* 615 F. Supp. 662, 678 (M.D. Fla. 1984) (in an unfair competition case, "the place of defendant's conduct is entitled to the greatest weight among the § 145 factors in this case").

For these reasons, at trial of this action Florida state law would be applied to adjudication of Perfect 10's claims of unfair trade practices. Florida has its own laws of unfair competition, *Fla. Stat. 501.201 et seq.,* and rights of publicity, *Fla. Stat. 540.08.* This Court is better able than a California court to apply Florida law, and this factor militates heavily against Perfect 10's motion.

E.  This District is Less Congested than the Central District of California.

As demonstrated by the court statistics attached to the Request for Judicial Notice supporting NMS' motion to dismiss in California (see Request for Judicial Notice submitted in this action), the Southern District of Florida brings civil cases to trial in a median time, 19.3 months, that is substantially faster than the median time to trial for civil cases in the Central District of California, 21.0 months.

F.  The Interests of Justice Weigh in Favor of Litigation of the Parties' Disputes in this District, Where the First Action Between Them was Filed.

Where two substantially overlapping actions are pending in two Districts, the parties are unfairly faced with the prospect of duplication of efforts, waste of judicial resources and the specter of inconsistent results. Ordinarily, in considering which of the two actions should be allowed to proceed, and which action should be dismissed, transferred or stayed, preference is given to the earlier-filed action -- the first-to-file rule. *See Ferens et ux. v. John Deere Co.*, 494 U.S. 516, 531, 110 S. Ct. 1274, 1284 (1990) ("We made quite clear that 'to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed

to prevent.") The first-to-file rule means that when two suits are pending involving substantially the same parties and issues, the action filed first ordinarily should proceed to judgment first. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F. 2d 622, 625 (9th Cir. 1991); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Perfect 10 claims that an exception should be made in this case to the first-to-file rule, supposedly because this action was filed in anticipation of Perfect 10's action in California. A party seeking departure from the first-to-file rule has the burden of establishing "compelling circumstances" to justify such a departure. *Supreme International Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 606 (S.D. Fla. 1997); *see Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006-07 (8th Cir. 1993) (affirming district court's decision to enjoin second-filed Texas action in favor of Minnesota declaratory judgment action where the court found no "compelling circumstances" for ignoring the first-filed rule).

Perfect 10 misstates the law in urging that the first-to-file rule should be ignored whenever it can be said that a declaratory relief case is "anticipatory." By definition, all declaratory relief suits are "anticipatory" in that, for the Court to have jurisdiction, there must be an existing dispute to adjudicate. *See Shields v. Norton*, 289 F.3d 832 (5th Cir. 2002) (noting that an action for declaratory relief allows "a party to anticipate a suit and seek a judicial resolution. . ."); *Abbott Laboratories, Inc. v. Mead Johnson & Co.*, 1998 U.S. Dist. LEXIS 12317, at *13 (S.D. Ohio April 21, 1998) ("declaratory judgment actions are, by their very nature, always anticipatory in some sense"). Courts have therefore narrowly applied the exception to the first-to-file rule to those actions that constitute a "race to the courthouse" because they are brought after a party receives "specific, concrete indications that a suit by the defendant was imminent." *See Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). A "cease-and-desist" letter threatening legal action in general terms is insufficient to warrant deviation from the first-to-file rule. *See AbovePeer, Inc. v. Recording Industry Assoc. of America*, 166 F.Supp. 2d 655, 658

(N.D. N.Y. 2001) (letter stating that if infringement did not stop within a week, company would have "little choice but to seek additional legal remedies" did not provide actual notice of litigation); *Employers Ins. Of Wausau v. Prudential Ins. Co.*, 763 F. Supp. 46, 49 (S.D. N.Y. 1991) (statement that party "hoped to avoid litigation" was not sufficient notice of suit). *See Supreme International Corp. v. Anheuser-Busch, Inc., supra,* 972 F. Supp. at 607 (holding that suit not anticipatory where Supreme sent "contradictory signs," first expressing an interest in working together on a television commercial campaign, then complaining but expressing interest in settlement and, finally, threatening suit). "There is no requirement that a business threatened with an infringement lawsuit sit back and wait to see if the other party is serious about suing." *Id.*

Further, even if the Court finds that this case was in anticipation of a concrete and specific threat to file imminent litigation, Perfect 10's motion should still be denied where the convenience factors as a whole weigh in favor of litigation in this District.   Perfect 10 erroneously suggests that departure from the first-to-file rule is standard in the case of declaratory relief suits.   Courts have consistently held, however, that even where an action is declaratory in nature *and* anticipatory of a suit for damages, the presumption is still in favor of the first to file. *See Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) ("The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action."), cert. denied, 510 U.S. 1140, 114 S.Ct. 1126 (1994), and rev'd on other grounds, *Genentech, Inc. v. Regents of the Univ. of Cal.*, 143 F.3d 1446 (Fed. Cir. 1998); *Allstate Insur. Co. v. Clohessy*, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998) ("And even where those conditions are present, 'the first-filed action is preferred, even if it is declaratory, unless considerations of judicial and litigant economy, and the just effective disposition of disputes, require otherwise.'")  This preference for the first-filed action is trumped only by considerations of "judicial and litigant economy, and the just and effective

disposition of disputes . . . ."   *Supreme International Corp. v. Anheuser-Busch, Inc., supra,* 972 F. Supp. 604, 606 (citations omitted).

The cases cited by Perfect 10 do not hold to the contrary. Rather, they merely stand for the proposition that the Court has the discretion to deviate from the first-to-file rule in the right factual setting. Here, the facts do not support Perfect 10's position.

In this case, Perfect 10 has failed to carry its heavy burden of demonstrating that the Court should not adhere to the first-to-file rule. The most damning evidence against Perfect 10 is that, while claiming to this Court that its plan to file in California was specific, concrete and imminent, Perfect 10's principal, Dr. Zadeh, admitted to Steve Easton, with whom Perfect 10 is working on the *Cybernet Ventures* case, that "Perfect 10 had not intended to sue NMS or Bennett, and that Perfect 10 filed suit in California only defensively and in reaction to learning that NMS had sued Perfect 10 in Florida." Perfect 10's April 9, 2002 letter did not carry a threat of litigation that was sufficiently clear to warrant deviation from the first-to-file rule. Dr. Zadeh merely stated that he would "take whatever steps are necessary to preserve and protect Perfect 10's rights." The letter ended with standard language about not waiving any rights, "including its right to seek redress in court . . . ." These statements are insufficient to constitute a clear and unambiguous warning of imminent litigation under the authorities cited above.

Perfect 10's April 9, 2002 communication should also be seen in context. Perfect 10 has made prior threats against clients of NMS that had not resulted in litigation, and recent threats against other companies in the adult Internet industry that have not resulted in litigation thus far. NMS did not know whether Perfect 10 really intended to sue on the heels of the April 9 letter or was merely sending another threat while it mulled over its course of action. In the end, NMS filed this declaratory relief action to avoid letting Perfect 10 hang its claims over NMS' head for a time period of Perfect 10's choosing, and to finally settle Perfect 10's baseless claims.

Perfect 10 claims that California is the superior forum for the parties' disputes because

this action is supposedly "related" to two other actions Perfect 10 has filed in California against adult content providers Cybernet Ventures and Tri-Tech. This claims is baseless. The opinion in the *Perfect 10 v. Cybernet Ventures* case was based upon detailed factual findings regarding the specific conduct of an unrelated third party, Cybernet Ventures. Here, in contrast, Perfect 10 has absolutely no evidence supporting its shrill charges against NMS. The fact that the parties to these three actions are in the same industry and that Perfect 10 has asserted similar claims for relief therein does not render the cases legally "related."

Perfect 10 also claims that deference should not be given to this action because the California action is supposedly more "complete," containing additional parties and a long list of claims for relief. To the contrary, these cases are substantially the same, as this case was intended to resolve all of Perfect 10's threats against NMS and its clients. The first-to-file rule applies even where the parties are not exactly identical so long as there is "substantial overlap" between the two cases. *See e.g. Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (instructing district court to transfer case to judge presiding over first-filed action); *Meeropol v. Nizer*, 505 F.2d 232, 235 (2nd Cir. 1974) (affirming injunction against second-filed action); *St. Helena Wine Co., Inc. v. Allied Management, Inc.*, 1998 U.S. Dist. LEXIS 12558, at *8 (N.D. Cal. Aug. 10, 1998) (applying first-to-file rule in favor of declaratory judgment suit in New Jersey and ordering transfer of action). In this case NMS did not know, if Perfect 10 decided to sue, exactly which parties it would sue and exactly how it would style its claims for relief. Thus, NMS sought a declaration regarding the liability of itself and its clientele with respect to the threats made by Perfect 10 in its correspondence to NMS, threats that identify each of the issues that Perfect 10 ultimately raised in the California action. Thus, the two actions are substantially the same, and the differences in appearance that Perfect 10 discusses should be given little weight.

## II.     STAY OF THIS ACTION IS NOT WARRANTED.

Perfect 10 urges that, as an alternative to dismissal or transfer, the Court should stay this action pending resolution of the California action.  Just as there is no justice in Perfect 10's claim that dismissal or transfer is warranted, the equities do not militate in favor of a stay of this action, which has the most compelling connection to the parties' disputes.  *See H.H. Robertson Co. v. Lumbermen's Mutual Casualty Co.*, 94 F.R.D. 578, 582 (W.D. Penn. 1982) ("Since this action was filed first, there is no reason to stay it, having decided to keep it."), *aff'd, H.H. Robertson Co. v. Lumbermens Mut. Cas. Co.*, 696 F.2d 982 (3rd Cir. 1982).

## CONCLUSION

For the foregoing reasons, NMS respectfully urges that Perfect 10's motion should be denied.

Dated: June 19, 2002

                    Lee A. Weintraub (Fla. Bar No.: 940704)
                    BECKER & POLIAKOFF, P.A.
                    Post Office Box 9057
                    Fort Lauderdale, FL 33310-9057
                    954/985-4147 (BR); 954/985-4176 (Facsimile)
                    305/944-2926 (Dade); 561/732-0803 (WPB)

                    Jay M. Spillane (Cal. Bar No. 126364)
                    (Pro Hac Vice Application Pending)
                    FOX & SPILLANE LLP
                    1880 Century Park East, Suite 1114
                    Los Angeles, California 90067
                    Telephone:     (310) 229-9300
                    Facsimile:      (310) 229-9380

                    By:  _____
                    Attorneys for Plaintiff, Net Management Services

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by U.S. mail to: **SEAN R. SANTINI, ESQ.**, ARAGON, BURLINGTON, WEIL & CROCKETT, P.A., Office in the Grove, 2699 S. Bayshore Drive, Penthouse A, Miami, FL 33133, this ___ day of June, 2002.

> Jay M. Spillane, Esq.
> FOX & SPILLANE LLP
> 1880 Century Park East, Suite 1114
> Los Angeles, CA 90067
>
>          and
>
> BECKER & POLIAKOFF, P.A.
> 3111 Stirling Road
> Ft. Lauderdale, FL 33312
> (954) 985-4147; (954) 985-4176 (fax)
>
>
> By _____
>        LEE A. WEINTRAUB
>        Florida Bar No. 940704
>        Attorneys for Plaintiff, Net Management Services

719591_1.DOC